## Hawkins v. Universal Steel Company.

*Contracts — Master and servant — Corporations — Resolutions—Board of directors—Consideration—Additional compensation—Record of credits—Failure to execute agreement—Estoppel—Evidence.*

1. A resolution of the board of directors of defendant company awarding additional compensation to plaintiff employee, the compensation being credited to him on the books of the company and also applied to his account on the purchase of capital stock of the company, the resolution not being rescinded, is binding on the company to deliver the stock and to pay the money.

2. As a general proposition of law, an agreement for additional compensation between employer and employee during the term for which the compensation of the employee has been fixed is unenforceable as being without consideration. To be enforceable, such contracts of increase must be made prior to the term of employment. Yet, if the employer promises additional compensation, even though there be no consideration for the same, if it be paid to the employee, whether it be in money or any other mode, the employee is justly entitled to the same.

3. An agreement for the purchase of capital stock of defendant company executed by plaintiff, but not formally executed by defendant, is binding upon defendant where it appears that defendant credited payments to plaintiff and paid dividends to trustees named in the contract, and by reason of such action defendant company is estopped from saying how its books of account and other matters were changed without notice to plaintiff and after plaintiff had left the employ of defendant.

Motion for judgment n. o. v. and new trial. C. P. Allegheny Co., April T., 1923, No. 621.

Before Kline and Rowand, JJ.

*Ralph L. Smith,* for plaintiff; *Harry J. Nesbit,* for defendant.

KLINE, J., June 8, 1925.—This was an action brought by the plaintiff to recover certain moneys which he alleged were due and owing him by virtue

of a breach of a certain contract entered into between him and the defendant company. The jury returned a verdict for the plaintiff in the sum of $3091.46.

The defendant filed a motion for judgment *non obstante veredicto* and for a new trial, setting forth the following reasons:

1. The evidence was against the weight of the evidence.

2. The verdict was contrary to the law.

3. The court erred in excluding the testimony of all matters subsequent to September, 1921, the date when the plaintiff resigned from the defendant's employ.

4. The court erred in excluding the testimony to explain the whole transaction of stock-buying by certain employees as based upon "Exhibit A" of the statement of claim.

The plaintiff, during the year 1920 and for several years prior thereto, was employed by the defendant as book-keeper at the defendant's steel works, at Bridgeville, Allegheny County, Pa. For the year 1920 the plaintiff's salary was fixed at $210 per month. During the year the general manager of the defendant company, on different occasions, told the plaintiff that he would receive additional compensation during the year.

At a meeting of the board of directors of the defendant company, held May 4, 1920, the following resolution was adopted, as appears in the minutes of the board: "After discussion of the question of the additional compensation for executives and employees for services rendered by them during the present year, it was resolved that the persons named below should be paid additional compensation in a total amount not to exceed $50,000, the details of which are left to the officials of the company: John A. Coyle, E. M. Stockdale, H. H. Sackville, U. Grant Miller, W. E. Nickeson, J. Howard Blair, Charles B. Nesbit, William D. Straine and G. B. Hawkins."

On Dec. 23, 1920, at a meeting of the board of directors of the defendant company, the following resolution was adopted: "The officials of the company, in line with the resolutions of the directors at the meeting held May 4, 1920, recommended the payment of additional compensation as follows (amongst others, G. B. Hawkins, $2500), total $50,000. On motion duly passed, the treasurer was directed to disburse the additional compensation as recommended above."

On or about Dec. 31, 1920, the defendant proposed to sell to the plaintiff 140 shares of the capital stock of the defendant corporation at $125 per share, the total purchase price being $17,500, and said additional compensation of $2500, by agreement between the plaintiff and defendant, was to be credited to plaintiff on account of said stock purchase instead of being paid in cash. The plaintiff executed said contract and also his note, as provided for therein, and delivered them to the defendant in accordance with the defendant's request.

The defendant, in making up its payroll voucher for the last two weeks of December, 1920, placed two items thereon opposite the name of the plaintiff; one item for $105 and one item for $2500. The first item being for the amount due for his regular salary, and was paid in cash; the second item being for the additional compensation voted to him as aforesaid, which was to be credited on his stock contract.

In the defendant's income tax report to the United States Government for the year 1920, they took credit for the item of $2500 as paid to the plaintiff as part of its operating expenses for the year. It likewise reported to the Government that the plaintiff had received said $2500 in addition to his regular salary of $2520.

According to the books of account of the defendant, credits were given the employees for payments on the contracts, and dividends were paid to the trustee named in the contract in May, 1921.

The stock contract signed by the plaintiff provided for the purchase of stock at the price of $125 a share, giving the option to the company to repurchase the stock at book value in case he left the company's employ within a certain length of time.

Through some cause unknown to the plaintiff, the defendant corporation did not formally execute the said contract for some time thereafter, and on Sept. 15, 1921, the plaintiff resigned his position and made a demand upon the company for his stock or the money credited on the contract, which was refused by the company.

The board of directors of the defendant company never took any steps or passed any resolutions to rescind their action in voting said money to the plaintiff as additional compensation for the year 1920.

As a general proposition of law, an agreement for additional compensation between employer and employee during the term for which the compensation of the employee has been fixed is unenforceable, as being without consideration To be enforceable, such contracts of increase must be made prior to the term of employment.

Yet, if the employer promises additional compensation, even though there be no consideration for the same, if it be paid to the employee, whether it be in money or any other mode, the employee is justly entitled to the same.

We are, then, confronted with the question, was the $2500 paid to the plaintiff by the defendant so as to permit of a recovery in this case?

The following facts appear:

That the compensation of the plaintiff for the year 1920 was fixed at $210 per month.

That the general manager of the defendant company told the plaintiff that he would receive additional compensation for the year 1920.

On May 4, 1920, at a meeting of the board of directors, a resolution was adopted that the plaintiff, among others, was to receive additional compensation for the year 1920.

On Dec. 23, 1920, at a meeting of the board of directors of the defendant company, the payment as additional compensation of $2500 to the plaintiff was directed to be disbursed as originally recommended.

That in making up the payroll voucher for the last two weeks in December, 1920, two items were placed by the defendant beside the name of the plaintiff; one item for $105 and one for $2500.

In the defendant's income tax report to the Government for the year 1920, it took credit for the item of $2500 as paid to the plaintiff as part of its operating expenses for the year.

It reported to the Government that the plaintiff had received $2500 in addition to his regular salary of $2520.

That on or about Dec. 31, 1920, the defendant proposed to sell to the plaintiff 140 shares of the capital stock of the defendant company at $125 per share, the total price being $17,500.

The said additional compensation of $2500, by agreement between the plaintiff and defendant, was to be credited to the plaintiff on account of said stock purchase instead of being paid in cash.

The plaintiff executed said contract and also his note, and delivered them to the defendant in accordance with the defendant's request.

That the defendant in its books of account gave credit to the employees who received additional compensation for payments on the contracts, and the dividends were paid to the trustee named in the contract in May, 1921.

That the board of directors of the defendant company neither took any steps nor passed any resolutions to rescind their action in voting said money to the plaintiff as additional compensation for the year 1920.

No testimony was offered to show that there were any details to be worked out after the contract signed by the plaintiff was completed, and why the contracts were not signed in 1921, after the employees signed them, does not appear. The company evidently considered the contracts to be in full force, because in their books of account credits were given to the employees for payments on the contracts, and the dividends were paid to the trustees named in the contracts made in 1920 and 1921.

We are, therefore, of the opinion that by the actions of the defendant, as evidenced by the minutes of the board of directors and the books of the company, the sum of $2500 was paid to the plaintiff by the defendant, and it cannot now be heard to say to the contrary.

The defendant endeavored to give evidence of how it changed its book entries and other matters after the plaintiff resigned from his position. We fail to see how the plaintiff could be in any way bound by the defendant's ex parte changing of book entries after he had left the defendant's employment and without his knowledge or consent.

After a careful consideration of the testimony, we are of the opinion that the verdict was not contrary to the weight of the evidence, and are further of the opinion that the motion for judgment non obstante veredicto should be refused and motion for new trial discharged.

From William J. Aiken, Pittsburgh, Pa.